# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

KARA LEE FORD                                                        PLAINTIFF

v.                     CASE NO. 4:17-CV-00830 BSM

THE ALOTIAN CLUB, INC., and
THE ALOTIAN CLUB LLC                              DEFENDANTS

## ORDER

Defendants' motion for summary judgment [Doc. No. 15] is granted.

## I. BACKGROUND

Plaintiff Kara Lee Ford sued the Alotian Club, Inc. and The Alotian Club LLC (the "Alotian" or "Club") alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"). *See* Compl., Doc. No. 1. The Alotian moves for summary judgment. Doc. No. 15.

When viewed in the light most favorable to Ford, the nonmoving party, the pertinent facts are as follows. Ford was 66 years old when the Alotian, an exclusive golf club, terminated her because "the [C]lub was going in a different direction." DeLozier Dep. 38, 40, Doc. Nos. 15-1, 24-1; Ford's Brief in Opposition to Summary Judgment ("Ford's Brief") at 2, Doc. No. 24. She was hired by the Club approximately three years before, as assistant to Chief Operating Officer Dan Snider. Ford Dep. 17, Doc. Nos. 15-4, 24-1; *See* Charge of Discrimination, Doc. No. 15-3. Her salary was $45,000, and when she was fired, it was about $49,000. Ford Dep. 17–18. Her duties included taking staff meeting minutes, managing concierges and reservations, and communicating reservations with other

departments. Ford Dep. 22–25; DeLozier Dep. 10–11. Snider retired at the end of 2015, and Patrick DeLozier became the new COO. Ford Statement of Facts ¶ 2, Doc. No. 23; DeLozier Decl. ¶ 19, Doc. No. 15-5.

About four months before DeLozier was promoted to COO, he hired Amy Ramage, then 29, as his administrative assistant, to work as a concierge, and to administratively support the golf course maintenance department. *See* Ramage Decl. ¶¶ 6, 8, Doc. No. 15-6; Employee Hiring Chart, Plaintiff's Ex. C, Doc. No. 24-1 at DF_00158; Staff Meeting Minutes Typed by Ford, August 11, 2015, DeLozier Decl. Ex. 1. Ramage had undergraduate and graduate degrees in hospitality management and had worked in hospitality and event planning since graduating. Ramage Decl. ¶¶ 2–3. On the other hand, Ford had decades of experience in public relations and marketing. Ford Dep. 8–13.

Ramage negotiated a one-time $1,500 clothing allowance when she was hired, a benefit that Ford did not receive. Ramage Decl. ¶ 5; Ford Dep. 52–53. She also started at a rate of $20 per hour, and later became salaried at $50,000 per year. Ramage Decl. ¶ 7; Ford Dep. 52. DeLozier gave Ramage some new duties that Ford felt were part of her domain in member preferences. Ford Dep. 23–25; Ramage Decl. ¶ 8. Although Ford complains that Ramage was also given a better schedule, *see* Ford Dep. 58, Ramage worked nearly three times as many weekends as Ford, which Ford did not enjoy working. *See* Weekends Worked, DeLozier Decl. Ex. 2; Ford Dep. 31–33. During a summer golf tournament, Ramage worked inside, while Ford kept score outside in the heat. Ford Dep. 56.

Although Ford's work performance was mostly satisfactory, she failed to meet

2

expectations on several occasions. She failed to notify the other Alotian departments of a dinner reservation in June 2015. *See* Cronkhite Decl. ¶ 6 & Ex. 2, Incident Report, Doc. No. 15-2; Ford Dep. 44–46. She struggled to recruit and retain concierges. *See* 2014 Ford Performance Review, Cronkhite Decl. Ex. 1, (Ford received a 3 out of 5 for "[i]nspires others to excel and trains thoroughly"); Ford Dep. 59–63; DeLozier Dep. 23–25, 29–30, 36–37. She resisted and resented working weekends. *See* Ford Dep. 31–33; Cronkhite Decl. ¶ 8. She also failed to notify the other departments of nearly three dozen reservations before taking scheduled medical leave. *See* DeLozier Decl. ¶ 30; Ramage Decl. ¶ 17; Ford Dep. 92 (testifying, when asked why she didn't enter the reservations, "I don't know that I didn't enter" them); Ford Statement of Facts ¶ 39 (suggesting guests' plans were not yet definitive). In addition, Ford apparently did not respect DeLozier. *See, e.g.*, Sept. 28, 2016 Ford Email to Dan Snider, DeLozier Decl. Ex. 11 (emailing Snider that DeLozier was "[f]eathering his own cap rather than caring about Alotian.").

While Ford was on medical leave, her duties were divided between several employees. *See* Duties Assignments, DeLozier Decl. Ex. G, Doc. No. 15-7, DeLozier Decl. ¶ 29. When she returned from leave, she was fired, Ford Dep. 76–78, DeLozier Decl. ¶¶ 38–39, Cronkhite Decl. ¶¶ 11–12, and her former duties remained dispersed, DeLozier Decl. ¶ 40. Some of those duties were absorbed into a new position, Director of Member Relations. DeLozier Decl. ¶ 41 & Ex. 9, Job Description; Ramage Decl. ¶ 21. One week after Ford was fired, Ramage was promoted to this new position with a salary of $70,000. Ramage Decl. ¶¶ 21, 23.

Ford filed a charge of discrimination with the Equal Employment Opportunity Commission and was given her right to sue. *See* Charge of Discrimination. She timely sued.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.*

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). All reasonable inferences must be drawn in a light most favorable to the nonmoving party, *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007), but a plaintiff's own self-serving, conclusory allegations in an affidavit or deposition, standing alone, are insufficient to defeat summary judgment, *Haas v. Kelly Services*, 409 F.3d 1030, 1034 (8th Cir. 2005). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

The Alotian's motion for summary judgment is granted on Ford's claim that the Alotian fired her and gave other employees preferential treatment because of Ford's age.

Assuming that Ford has shown a prima facie case, she has not shown that her age was the but-for cause of her termination. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act.")). She has also fails to show that the Alotian's legitimate, nondiscriminatory reason for firing her is pretext for discrimination. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007).

DeLozier stated that the Alotian was terminating Ford because it was "going in a different direction." DeLozier Dep. 38–40. There is no doubt that "employers are free to make their own business decisions . . . so long as they do not discriminate unlawfully." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011) (quoting *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir.1997)). The ADEA does "not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices." *Id.* (quoting *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997)).

Ford was not meeting the Alotian's expectations for keeping and communicating reservations. *See* Cronkhite Decl. ¶ 6, Incident Report, & Performance Review, Doc. No. 15-2; DeLozier Decl. ¶ 30; Ramage Decl. ¶ 17; Ford Dep. 90–93. Ford also complained about working weekends, while Ramage regularly worked weekends. *See* Weekends Worked; Ford Dep. 32–33. This is important because golf clubs are especially busy on weekends. *See* DeLozier Dep. 29–30.

5

When Ford took medical leave, DeLozier gave her duties to other employees to ensure that they were covered while Ford was gone. *See* DeLozier Decl. ¶ 29 & Duties Assignments. Although her duties largely remained divvied up after she was fired, Ford does not allege that she was given more work than other employees, which might explain why she was not meeting expectations. *See* DeLozier Decl. ¶¶ 40–41 & Duties Assignments. Instead, she alleges that DeLozier took some of her duties, such as scheduling, Ford Dep. 50, 58, and gave some new duties under the membership services umbrella to Ramage, Ford Dep. 23–25. *See Marxkors v. GTE Wireless, Inc.*, 19 F. App'x 476, 477 (8th Cir. 2001) (affirming summary judgment when employee who was not retained after her company's reorganization failed to show how her unsatisfactory performance was pretext for age discrimination). She admits, however, that the duties he gave to Ramage were new, and "that duty should have been given to me since I was over membership services." Ford Dep. 24–25.

Ford argues that the Club's reason for her termination changed from "going in a different direction" to "reorganization," and that this changing rationale is evidence of pretext. Ford Brief at 16–17; Arkansas Dep't of Workforce Services Form, Doc. No. 24-1 at 45. This discrepancy, however, is inconsequential and does not support Ford's pretext argument. *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (requiring that the change in rationale be "substantial"). The Alotian continues to maintain that it went in a different direction—by restructuring Ford's position. *See* DeLozier Decl. ¶ 41; Ramage Decl. ¶ 21.

Ford also argues that the Alotian hired younger employees, in part, to carry out its

6

succession plan. She points to the Club's hiring DeLozier, then 38, to replace her boss, Snider, when he retired, and to the hiring of a 27-year-old to replace George Cronkhite as Controller. *See* Ford Brief at 15, 18; Ford Dep. 80. Ford does not present any proof that either Cronkhite, 76, or Snider were forced to retire; instead, Cronkhite's affidavit states the opposite and that he is still employed as Valet Manager. *See* Cronkhite Decl. ¶¶ 14–17 ("I was not asked or forced to retire or leave my position as Controller."). Even if the succession plan included hiring younger employees to replace retiring ones, it does not support a pretext argument because nothing indicates Ford was terminated because of her age. *See Gross*, 557 U.S. at 176.

Ford also points out that Ramage received preferential treatment, such as higher pay, a clothing allowance, a better schedule, and a position inside once while Ford had to work outside in the summer heat. These comparisons are not persuasive because Ford and Ramage were not similarly-situated employees. *See Johnson*, 769 F.3d at 613. Ramage was not hired for the same role as Ford, but to support golf maintenance and concierge services, in addition to assisting DeLozier. *See* Ramage Decl. ¶ 8; Staff Meeting Minutes Typed by Ford. Ramage's credentials and work experience were specific to hospitality, *see* Ramage Decl. ¶¶ 2–4, whereas Ford had never worked in hospitality before the Alotian, Ford Dep. 8–13. Moreover, the position Ramage was given after Ford's termination was not the same position that Ford held. Ramage was given some of Ford's duties but was also given duties with an emphasis on membership services, event planning, and certain human resources tasks. *See* DeLozier Decl. Ex. 9, Job Description; Ramage Decl. ¶ 21.

Finally, summary judgment is granted as to any argument tending to suggest that Ford was constructively discharged because she was in fact terminated, and did not quit. *See Willis v. Henderson*, 262 F.3d 801, 810 (8th Cir. 2001) (quoting *White v. Honeywell, Inc.*, 141 F.3d 1270, 1279 (8th Cir.1998)) (explaining that plaintiff must show he was "essentially forced" to quit for a claim of constructive discharge).

IV. CONCLUSION

For these reasons, defendants' motion for summary judgment [Doc. No. 15] is granted, and this case is dismissed with prejudice.

IT IS SO ORDERED this 11th day of February 2019.

_____
UNITED STATES DISTRICT JUDGE